JULIA ACEVEDO, Plaintiff and Appellant, v. HEIRS OF HENRY W. DOOLEY, ETC., Defendants and Appellees.

No. 7160. Argued May 20, 1937.—Decided July 23, 1937.

*Carlos D. Vázquez* for appellant. *Dubón & Ochoteco* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action to rescind a contract which was decided against the plaintiff. The latter alleged in substance, that Henry W. Dooley sold her two lots in Santurce for the price of $1,090, payable $25 down, and the balance in monthly payments not less than $20, said price including the interest and the taxes, and the vendor agreeing to execute a deed free of liens upon receipt of the full amount; that the purchaser paid the first $25 on March 13, 1922, and later made payments on the dates mentioned up to the amount of $1,010; that at the end of the year 1929 she went to pay to the vendor the balance of $80, demanding the execution of the deed and Dooley refused to receive the balance and to execute the instrument, and that although the contract was rescinded, neither the vendor prior to his death in 1932, nor his heirs subsequently have returned to the plaintiff the $1,010 paid, in spite of the demands made by the plaintiff. Judgment was prayed for compelling the defendants Heirs of Dooley to pay to the plaintiff said sums, interest and cost.

The defendants answered. They admitted the execution of the contract and the price of the sale, but denied that the price included the interest and the taxes. They admitted that the vendor was obliged to execute the deed upon receipt

of the price in full, but denied that the balance was of $80, alleging on the contrary that it amounted to $120, and that the purchaser owed besides $230.55 for interest and taxes. They attached to their answer a detailed statement of the payments made, of the interest for defaults and of the taxes. They prayed for a judgment dismissing the complaint and compelling the plaintiff to pay $352.55, interest and costs.

With the issue thus joined the suit wént to trial. Both parties offered documentary and oral evidence. The district court in a long statement of the case and opinion, analyzed the allegations and the evidence and concluded that it had not been proved that the vendor violated the contract, and hence its rescision for said motive did not lie. By its judgment it declared "the complaint is dismissed, without special award of costs." The plaintiff felt aggrieved and took an appeal. In her brief she charges the commission of five errors which all refer to the evidence—to its admission and to the weight of the same.

By the first assignment she maintains that the court erred in admitting in evidence certain letters written by the predecessor in interest of the defendant's heirs, to the plaintiff.

Objection was made to their admission on the ground that they were self-serving evidence, as the controversy between the parties originated in December of 1929 and the letters were written in January, 1930, when there was a possibility of litigation. The decisions of this Court in *Méndez* v. *Martínez*, 24 P.R.R. 224, and *Freiría & Co.* v. *Cortés Brothers & Co.*, 32 P.R.R. 117, are cited.

One of the letters, the longest, reads:

"January 22, 1930.—Mrs. Julia Acevedo, c/o Carmelo García, 36 Carretera Quintana, Hato Rey.—Lots 7 and 9.—My dear madam: Referring to your visit of yesterday with your two brothers, we tried to make very clear to you the matter of the two lots. On December 27, we delivered a detailed statement to your agent, for lots 7 and 9 at Avenida del Río, there being a balance in our favor of $218.13

in lot 7 and $218.12 in lot 9, making a total of $436.25. We agreed to make a reduction of $40 payment of which you claimed to have made, but which does not appear in our books, and hence after deducting these $40 the balance was reduced to $396.25. Moreover, we agreed to make another reduction if both lots were paid, and as we agreed with your representatives, we were willing to accept a payment of $350 as payment in full for the two lots, and to deliver the deeds for the same. This we are ready to do provided that payment is made promptly and before interest accumulates.—Very truly yours (Sgd.) H. W. D.''

The documents were presented in carbon copies identified by the witness María E. Campos, secretary of the predecessor in interest of the defendant, who also testified that all of them were marked by the predecessor in interest himself. All of them were delivered personally by the witness José Hernández, or properly sent by the mail.

We do not believe that their admission was erroneous. When analyzed in connection with the evidence of the plaintiff herself they have a close connection with the same. They refer to the exact question in controversy. And as to the contention that they may have been written in contemplation of future litigation, this would relate more to their weight in evidence rather than to their admissibility.

''Written communications passing between the parties to an action and relating to the subject matter thereof are as a rule admissible in evidence. . . . . The possibility that a letter written after the commencement of an action may be manufactured evidence goes to its weight, not its competency.'' 10 R.C.L. 1147, 1148.

This is a stronger case as the suit had not begun when the letters were written and sent to the plaintiff. Referring expressly to the letter we have transcribed, it is evident that its purpose was to put in writing immediately the extent of the conference, in order to make clear its terms and for the benefit of both parties, and in order to act in the future upon a fixed basis.

We have studied the cases of this Court cited and they reveal different situations to that of the instant cases. In

the former which is the case of *Méndez* v. *Martínez,* 24 P.R.R. 224, this Court said:

"The tenth exception turned upon the refusal of the court to admit a letter wherein Víctor Martínez, Senior, wrote a letter to his wife in which he said that Víctor P. Martínez was his only legitimate son. This letter was in the nature of a self-serving declaration. It was *res inter alios acta* and no reason was shown for its admission. We find no error and the letter would have practically no probative force of any kind. Without the solemnity of an oath a letter written by a man to his wife in which he says he has no other child but. his legitimate son, even if it were competent evidence, would be even less convincing or probatory than the statement of a man that a piece of property was his own and not ganancial."

And in the second, which is the case of *Freiría & Co.* v. *Cortés Brothers & Co.,* 32 P.R.R. 117, it was said:

"The letters transcribed explain the situation of this case. The alleged existence of a subsequent agreement or novation of the contract of purchase and sale appears from the letters of the defendants, but not from those of the plaintiffs. On the contrary, in their reply of August 18, 1920, the plaintiffs said in unequivocal language that the sale was outright and not conditional or subject to any eventuality, thus dispelling the doubts that the defendants sought to imply from the first reply of the plaintiffs of July 28, 1920, by interpreting it as an evasive answer and a tacit admission of the modification of the original contract. . . . Therefore, it appearing clearly that there was a complete absence of assent on the part of the plaintiffs to a second agreement, the rule applicable to this class of cases is 'that a party cannot make evidence for himself by his written communications addressed to the other party as to the character of dealings between them, or the liability of the party to whom they are addressed, in the absence of any reply assenting to the same.' 10 R.C.L. 1150."

In the instant case we have said the contents of the letter has a close relation with the evidence of the plaintiff. The controversy between the parties originated as to the payment of $40 and as to the charge for interest for defaults and for taxes.

■ The second assignment charges the court with error in admitting the statement of Amos J. King in connection with the contents of the books of accounting of the vendor.

The witness testified that he was administrator of the defendant' heirs, and that the plaintiff, Tiburcio D. García and Andrés Cabrera, came to his office to offer eighty dollars in payment of the debt in full, and to demand execution of the deed; and that as he did not know said persons and had no knowledge of the transaction, he made an investigation in the books of Dooley and he then refused to receive the eighty dollars because said books showed the balance of $331 in favor of the heirs.

The plaintiff objected and asked that the book be offered as they were the best evidence on the matter and the court admitted the statement.

Even though the error assigned had been committed, in view of the attendant circumstances we do not think that it was prejudicial. As the appellees maintains in their brief, the fact in controversy was not the contents in the books, but the balance of the debt of the plaintiff. A detailed statement of the payments stating their amount and date and a computation of the interest for default in accordance with the same and, furthermore, of the charges for taxes, was accompanied with the answer. And this document which was not impugned, coincides as to the payments in their dates and amounts with the statements that the plaintiff herself included in her complaint with the exception of the payment of $40, which according to the plaintiff was made on July 6, 1922, and which does not appear in the liquidation. Furthermore, the plaintiff presented all the receipts delivered when payments were made and that which refers to the controverted payment of July 6 is very different in fact from the others.

■ The third, fourth and fifth assignments refer to the weight of the evidence. By them the appellant maintains that the lower court erred in deciding that no payment of $40

was made on July 6, 1922, that it committed manifest error in weighing the evidence as a whole, and that its judgment is contrary to the law and to the evidence.

We copy from the brief of the appellant:

"Before arguing these assignments it is convenient to inform this Court of the importance of the following controverted facts: Whether or not the plaintiff on July 6, 1922, paid the sum of $40 on account of the price of the lots. If the plaintiff made said payment then there is a basis to consider whether Mr. Dooley could demand, besides the eighty dollars, the payment of the taxes and interest in accordance with the contract existing between them. If the plaintiff failed to make said payment then Mr. Dooley was not bound to accept the eighty dollars as the balance of the purchase price and it is unnecessary to decide the other questions involved in this suit."

In order to prove the payment in question the plaintiff presented the document to which we have referred, and which she maintains is a receipt, and the statement of Tiburcio D. García, her husband.

The lower court analyses, compares, and weighs said evidence in the statement of the case and opinion, as follows:

"Tiburcio D. García, the agent of the plaintiff, testified that he made the payment of $40 on the date to which the document refers, to F. del Río, who was then an employee of Mr. Dooley, but that he did not pay one dollar as surcharge, and that said document was delivered by the said Mr. del Río, without signature.

"On June 18, 1922, there appears a receipt which reads: 'For the installment corresponding to the month of April, 1922, $20.'

"On July 12, 1922, another receipt was issued, as follows: 'On account of her lots Nos. 7 and 9 of Avenida del Río, $20.'

"And of August 1, 1922, there is another receipt, which reads: 'Installment for the month of June, 1922, two lots 7 and 9.—$20.'

"These three receipts are signed as follows: 'Henry W. Dooley, by F. del Río.' And if they are the written truth, for Messrs. Dooley and del Río have died, the former in 1932, and the latter in 1924, and they cannot come here to testify, that the installments due on April, May and June, 1922, were paid in June 18, July 12, and August 1, 1922, respectively, then the statement of Tiburcio D. García that he paid F. del Río on July 6, 1922, for the said months

of May and June, 1922, and that said document without signature was delivered to him, is not true. In the manner that the document is drafted, it appears to be a note or memorandum of the installments due and of that which would become due, and of the obligation of paying surcharges for defaults. In the account presented by the defendant the payments appear on the dates which appear in the signed receipts, and the surcharges for the days of defaults in the payments."

After a direct inspection of the original documents sent to this Court, and of the receipts for payment the original of which were also sent up, we think that the conclusion which the trial judge reached should not be altered.

The document is not only unsigned as a receipt, but the two monthly installments to which if refers,—May and June, 1922—are covered by the receipts to which the trial judge refers. Under these circumstances, we cannot decide that said judge erred in failing to give credit to the statement of the husband and agent of the plaintiff.

Having reached the above conclusions, we would have nothing else to say to dismiss the appeal, in accordance with the way pointed by the appellant herself in her brief. In spite of this fact we think it is proper and convenient for us to end our opinion copying the last two paragraphs of the statements of the case and the opinion of the lower court. They read as follows:

"In view of the foregoing, and as this is not a suit to enforce a contract, it seems unnecessary to consider whether the purchase price included the amount of the taxes and the interest of the debt, or whether it was also agreed to pay the taxes assessed on the lots, and the interest on the balance of the debt. However, as to the interest we will say, that although in the document of purchase there is no express agreement with respect to the payment of the same, what the defendant claims are interest for default in the performance of the obligation which in accordance with Section 1067 of the Civil Code begins to run from the date on which the creditor demands payment, whether judicial or extrajudicially. It may be, although we do not decide it, that the receipt of the installments that had been paid, without any reservation with respect to the interest ex-

tinguished the obligation of the debtor as to the same, in view of Section 1067 of the Civil Code; but as it has been shown that from the capital there is pending payment the sum of $120, which is due September 13, 1926, and that Mr. Dooley, extrajudicially demanded performance of the obligation as it appears from the letters offered, the first of which is dated February 28, 1929, it is clear that it was proper to charge interest for defaults at 6 per cent a year from said date.

"The evidence shows, that after the contract of purchase and sale, the purchaser committed acts of possession on the lots, pulling the weeds, and killing them, and although it appears also that the same at some time was occupied by Amelio Delanoy and Lino Dávila, during the year 1932 and until the cyclone of San Ciprián, it has not been satisfactorily shown that this was done by a contract with Henry W. Dooley, who died on March 4, 1932. Amos J. King, his testamentary administrator, testified that he did not know Emilio Dávila nor Amelio Delanoy, and, that he never received from them any money as rent for the lots."

The appeal is dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.